## Snevily *against* Egle.

[n an action of covenant by a vendor against a vendee to compel the payment or purchase-money, upon the pleas of *non est factum* and covenants performed, if tne defendant rest his defence upon a defective or encumbered title of the plaintiff, he must make that defence on the trial of the cause, otherwise he cannot avail himself of it upon a writ of error.

ERROR to the Common Pleas of *Dauphin* county.

This was an action of covenant by the executors of William Egle against John Snevily. The facts of the case and errors assigned are fully stated in the opinion of the court. The cause was argued by

*Rawn*, for plaintiff in error.
*M'Clure*, for defendant in error.

The opinion of the Court was delivered by

HUSTON, J.—William Egle, in his lifetime, entered into articles of agreement to sell to John Snevily a lot or piece of ground in the borough of Harrisburg, being 26 feet on Front street, 106 feet on Mulberry street, 26 feet by a 4-feet alley, and 106 feet to Front street, &c., &c.; to make a good title, clear of encumbrances, &c., on 1st April 1839, and then give possession; and John Snevily agreed and covenanted, at or before the execution and delivery of the deed, to pay $3000.

This was an action of covenant to recover the purchase money. William Egle had executed a deed a few days before the 1st April 1839, and procured the tenants in possession to remove, but on that day he was sick of a disease, of which he died a few days after, having made his will, and appointed the plaintiffs below his executors. Snevily had received the possession on 1st April 1839, and has had possession by his tenants to this time.

To the action he pleaded covenants performed, and after the jury was sworn, added the plea of *non est factum*.

It was admitted that the omission to tender a deed by Egle on 1st April 1839 was waived by Snevily's accepting and keeping the possession.

The plaintiffs below, after proving the execution of the articles of agreement, offered in evidence the articles dated —— October 1838. The narr. followed the articles, and left a blank for the day of the month October 1838 in their date.

The defendant objected to the articles because no day is men-

[Snevily v. Egle.]

tioned in the narr. when the articles were entered into, and took exception to the court admitting them in evidence, but this exception, though assigned for error, was abandoned in this court.

The articles of agreement were then read, and after describing the property as above, recited that it was part of the property sold by John Harris's executors to Jacob Peifer.

Robert Harris proved that he, as executor of John Harris, had conveyed to Peifer, 15th October 1796, and Peifer had entered into possession; that after this Perry C. Nabb occupied it, or part of it, built a frame house on it, and sold to William Egle, who had been in possession till it was delivered to Snevily; there were now three tenements on it. The will of Jacob Peifer, dated 28th February 1820, proved July 28th 1824, was then given in evidence.

Those parts of this will which, in this court, were supposed material, were as follows:

He gave to his wife the house and lot in which he resided, in the borough of Lebanon, as long as she remained his widow. After some legacies to grandchildren and two of his sons, which, with advancements to their fathers, were to be in full of their portions of his estate, he directed the rest of his real estate, of which the lot and tenements in question were part, to be rented by his executors, or the survivor of them, "until such time as a majority of my residuary legatees (hereinafter named) shall think expedient and agree that it shall be sold, and the one-third of the rent, (deducting taxes and repairs) shall be paid to my wife from time to time, till the same is sold as aforesaid. And it is my will, and I hereby direct that my executors, or the survivor of them, as soon as the majority of my residuary legatees shall agree as aforesaid, shall sell said real estate for the best price that can be gotten for the same, and for such payments as my executors, or the survivor, shall think proper, and for most advantage to my estate; but one-third of the purchase-money shall be and remain charged on my real estate during the life of my wife Esther, and she, my said wife, shall have and receive the yearly interest of the one-third part of the money in hand, and one-third part of the instalments or sales, as they respectively become due, of the purchase or consideration money aforesaid during her life." These bequests to his wife to be in lieu of dower.

The testator then directs that the proceeds of sales of his lands, and all his personal property not before disposed of, shall be equally divided among his seven children thereafter named, after deducting such money and articles as had been advanced to each of them, or paid for them, so that they may have equal shares. The legatees named, are Mary Ann Stoy, widow, David Peifer, Jacob Peifer, Henry Peifer, Catharine Foust, wife of Daniel Foust, Abraham Peifer, and Esther Fitsberger, wife of Henry Fitsberger, and her two children, Catharine and Maria—this last seventh put under the care of trustees—and he appointed his son-in-law, Da-

I.—61          2 Q

niel Foust, and his son, Henry Peifer, executors of his will and trustees of his daughter, Esther Fitsberger, and her two children.

Plaintiffs then read a deed dated 21st March 1826, from Daniel Foust, surviving executor, to Perry C. Nabb.

Deed dated 27th October 1832, from Perry C. Nabb to William Egle; and deed dated 1st April 1839, from William Egle to John Snevily.

There seems to have been some doubt as to whether the Court of Common Pleas, under a former law, or the Orphans' Court, under the Act of 1832, was the proper one to decree a deed by Egle's executors, (the deed last mentioned, by Egle to Snevily, not having been delivered in Egle's lifetime;) and petitions and regular proceedings were had in Common Pleas, and also in Orphans' Court, and the executors ordered to make a deed to John Snevily. John Snevily had joined the executors of Egle in the petition to direct a deed to him.

The plaintiffs then proved an offer of the deed to John Snevily, on the 11th of July 1840; and again a tender of the deed made by Egle, and of the deed made by the executors, on the 15th of July 1840. John Snevily then said he acknowledged the tender; made no objection. After this, no money being paid, this suit was brought. Plaintiffs lodged in court the deeds to defendant.

Defendant then showed three certain judgments against William Egle, in his lifetime; all of which appeared to be discharged on the docket; the last of them on the 7th of July, before the deed was tendered.

The testimony as above being closed, the counsel of the defendant did not address the jury. By our law and practice, either party may request the court to give an opinion to the jury on any point of law arising in the case; no request of this kind was made to the court by defendant's counsel. The court in a few words told the jury: "The defendant has no defence, having got possession of the property, having instructed his counsel to plead covenants performed, alleging that he had paid the money, and instructed his counsel so to plead; not having denied the title of the plaintiffs, or even pleaded that the plaintiffs had not complied with their part of the contract, it would seem he wishes to keep the property without paying for it. His conduct has been trifling, &c. &c. We therefore direct a verdict for plaintiff." To this a writ of error was brought, and errors assigned.

The first error was properly waived.

Second error.—The court erred in saying the plaintiff was entitled to a verdict:

First, because there was no evidence to show that the legatees of Jacob Peifer had made the agreement required by the will, previous to a sale; nor that the widow was dead, or her lien on this property discharged.

[Snevily v. Egle.]

Second, because there were encumbrances when the deed was to have been made, and at and after the tender of the deed.

I premise that the articles of agreement above referred to, stated the whole title of Egle, from John Harris's executors, in 1796, down to Egle. There was then full time and opportunity to Snevily to inquire as to the agreement of the legatees, and as to the death of the widow. The Peifer family lived a few miles distant in the borough of Lebanon. Able and astute counsel, with a man so conversant in contracts as his client, could not have omitted to call for the proof now first suggested in the assignment of errors; unless he knew they had agreed previously to the sale, or ratified the sale by receiving their respective shares of the purchase money; and as to the widow, he had not neglected to inquire and learn whether she was dead, or if not, had drawn her interest on one-third of the purchase money. The court expressed that their opinion was founded on the facts and pleadings. They had a right to do so; and to assume that the matter now alleged as error was not pleaded, because it was certain the plaintiff would have proved what would have fully answered such plea or pleas. The defendant's counsel was not ignorant of law, or careless of the interest of his clients. A new plea, *non est factum,* had been added at or after the swearing the jury. John Snevily, with full notice of the title, had joined the executors of Egle in praying the court to authorize and direct them to execute a deed to him. When the deed was tendered, he made no objection to the title; he made none by his pleas. On *non est factum* pleaded, generally, if the deed is proved, this plea admits the truth of its contents; covenants performed, also puts the defendant to proof that he has done his part. The court had permitted the defendant to show encumbrances; and of course would have permitted him, as they were bound to do under our Act of Assembly, to add any plea material during the trial. In this, or any such case, the charge was right, The testimony, except as to the tender, was in writing. The cause depended on the law; and there are cases, of which this is one, where it is the duty of the court to say that one party is entitled to a verdict.

There is another error assigned; in refusing leave to defendant to amend his pleadings during the trial of the cause, and before the court commenced charging the jury, as he proposed to do as follows: viz. "Plaintiffs did not perform the covenants on their part;" and yet charging the jury as he did.

This will be disposed of by stating that nothing relating to such offer appears on the record; no exception to the opinion of the court in rejecting the offer appears; no *certiorari* to the judge, who lives in town, was asked for; and the opposite counsel do not admit, but deny, that any such offer of a plea was made or spoken of until after the judge had charged the jury.

[Snevily v. Egle.]

We cannot reverse on what is not on the record sent to us, or even have it discussed.

I will add, that the first sentence uttered by counsel for the plaintiff in error in this court was, "We don't object to the fact that the deed was not tendered on the day." That was waived, and J. Snevily entered on the possession. If the plaintiff sets out the title, he is bound to prove it as stated; if he states, generally, that he has performed and offered a good title, defendant must plead that he did not offer, or was not seised of a good title, and such general plea was held good. *Cro. Jac.* 369; *Platt on Cov.* 308. Or defendant may plead as a reason for non-performance, that plaintiff has not performed a condition precedent. 1 *Chit. Pl.* 355.

Judgment affirmed.