| 67 | 217 |
|----|-----|
| 132 | 295 |
| 67 | 217 |
| 156 | 171 |
| 67 | 217 |
| 165 | 642 |
| 67 | 217 |
| 181 | 206 |

## Negley *et al. versus* Lindsay.

| 67 | 217 |
|----|-----|
| 203 | 4 10 |
| 67 | 217 |
| 30 SC | 442 |
| 30 SC | 443 |

1. A deed tendered containing an imperfect description, but like that in the articles, *held* to be admissible in an action of debt to recover the purchase-money.

2. In an action of debt to recover the purchase-money under an agreement, the defence being fraud in misrepresenting the value of the land, evidence was inadmissible for the plaintiff that he previously had a higher offer for the land from responsible persons.

3. Where a contract is void on the ground of public policy or against a statute, its confirmation is affected with the original taint.

4. Where a contract is void on account of fraud practised on the party, it may be confirmed or ratified without a new contract founded on a new consideration.

5. If a contract be merely against conscience, and the party being informed of all its circumstances and the objections to it, confirms it, he bars himself from the relief he otherwise might have had.

6. In an action of debt for the purchase-money of land for which he bound himself by articles to give "a warranty deed," the plaintiff declared that he had kept and observed the agreement and had been at all times ready and willing to do and perform all things required by it; the plea was, that the plaintiff was not at the date of the agreement and is not seised of

[Negley *v.* Lindsay.]

the land. This was a traverse of the plaintiff's performance and readiness to perform, and was notice to the plaintiff to prove his title.

7. Under the pleadings the *onus* was on the plaintiff to prove that he had a good title before he could recover the purchase-money.

8. Duncan *v.* McCullough, 4 S. & R. 487, is overruled by Pearsol *v.* Chapin, 8 Wright 9.

9. Dearth *v.* Williamson, 2 S. & R. 498, Heron *v.* Hoffman, 3 Rawle 400, remarked on.

November 22d and 23d 1870.   Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Allegheny county:* No. 227, to October and November Term 1869.

This was an action of debt ($10,000), brought March 4th 1866, by William Lindsay against George G. Negley, Thomas W. Lindsay, John N. Borlin and James S. Negley.

The declaration, in the first count, set out *totidem verbis* an agreement, dated March 7th 1865 (hereafter given), for the purchase by the defendants from the plaintiff of a tract of land in Wood county, West Virginia, for $10,000, payable in one year; the plaintiff binding himself to deliver to the defendants " a warranty deed," on payment of the purchase-money.   The declaration averred that the plaintiff " hath at all times been ready and willing and now is ready and willing to do and perform all things required of him in and by said agreement, and that heretofore, to wit, on the 7th day of March, A. D. 1866, at the county aforesaid, he tendered unto the defendants a warranty deed for said land, duly executed according to the tenor of said agreement, and demanded of them the payment of the said sum of $10,000, but the defendants then and there did decline to accept said deed, and did refuse to pay the plaintiff the said sum of money," &c.

The second count was the same as the first, except that it averred a waiver of the tender of the deed.

The defendants filed affidavits of defence averring fraud and misrepresentation on the part of the plaintiff, and also that the agreement had been rescinded and merged in another for forming an oil company of which the land was to be the capital and of which the plaintiff was one of the members.

They also pleaded "*non est factum*," "not indebted," &c., fraud, as set out in the affidavit of defence, and the following special pleas :—

1. The said plaintiff was not at the date of said alleged agreement or contract in said declaration mentioned, and is not seised of the said tract or parcel of land in the said declaration and contract mentioned and described.

2. That the title to the said tract or parcel of land in the said declaration mentioned, was not at the date and time of making the said alleged agreement or contract in said declaration mentioned, nor since, in him, the said plaintiff.

[Negley *v.* Lindsay.]

On the trial, September 20th 1869, before Stowe, J., the plaintiff gave in evidence the articles of agreement, as follows : * * *

" That the said party of the first part, for himself, his heirs, executors and representatives, has contracted with and agrees to sell to the said parties of the second part, all that certain tract or parcel of land situate in Wood county, West Virginia, located on Little Stillwell creek, between three and four miles from the Baltimore and Ohio Railroad, on the National Turnpike, bounded as follows : on the west by lands of　　　　Musser, on the east by lands of　　　　Grant, on the north by land of　　　　, on the south by land of　　　　, and contains 186 acres, more or less, and now occupied by Jacob Buzzard, as tenant, for and in consideration of the sum of ten thousand dollars, payable on or before the expiration of one year from this date.

" The said parties of the second part to have immediate possession of said land, subject to the lease of said Buzzard. The said party of the first part hereby acknowledges the receipt of one dollar in part payment, and binds himself, his heirs, executors and representatives to execute and deliver to the said parties of the second part, their heirs, executors and representatives, a warranty deed upon the payment of the said ten thousand dollars, in lawful money of the United States."

Also the tender of the deed about March 7th 1866, and that it was refused.

He then offered in evidence a deed, the description of the land being precisely as in the articles. The defendants objected to its admission, as " insufficient, defective in. description" so that the land could not be identified.

The deed was admitted and a bill of exceptions sealed.

The plaintiff rested. The defendants moved for a nonsuit, which was refused and a bill of exceptions sealed.

The defendants gave evidence that at and immediately before the execution of the articles of agreement, the defendants or some of them said to the plaintiff that they did not know anything about the land, and that they must rely upon his representations. The plaintiff replied that it was " first-rate oil territory ;" that he had a perfect knowledge of the land, and knew it to be first-rate oil territory ; that the plaintiff proposed to form an oil company in which he would take a share of $1000. They gave a considerable amount of evidence to show the representations of the plaintiff as above stated. They also gave evidence that before the papers were delivered, it was proposed amongst the parties, including the plaintiff, to make a stock company ; that Benjamin McLain was named as a suitable person to take charge of the matter ; that it was agreed that each should take $1000 in the company, the land being put in at $16,000 ; they went to McLain's office the next day, the prospectus was there, with the

name of the plaintiff and some others signed to it. The prospectus was an agreement on the part of the plaintiff to sell the land at the price named in the prospectus, $16,000, and an agreement to pay the sums set opposite to the names of the signers to purchase the tract from the plaintiff at that price. J. S. Negley went to look at the land about March 15th; was there four or five days examining the land; informed the tenant, Buzzard, that they were going to form an oil company to purchase land and develop the territory, &c., and asked him as to boarding for his workmen and teams; he found no oil on the property, nor any wells in the neighborhood where the plaintiff had said there were wells; he informed McLain on his return; the project of a company was abandoned; he informed Lindsay that there was no oil, and said the paper was a mere memorandum, having no validity for want of a stamp; told him the whole thing was a fraud; none of the defendants ever attempted to take possession of the land. The plaintiff gave evidence to show that the land was valueless for oil and almost so for any purpose.

Buzzard, the tenant, testified for the plaintiff as to J. S. Negley coming to the land in March 1865, going over it and examining it; he authorized the witness to sell it for $100 per acre if he could; Negley obtained liberty from witness to bore for oil, and drew a paper for the purpose which witness signed, giving liberty to "William Lindsay or his representatives to enter, search and bore for petroleum and other minerals."

The plaintiff then offered to prove by the witness: "Shortly before the 7th of March 1865 the witness received an offer for the purchase of the land in controversy at the price of $14,000; that this offer was in the month of February 1865, and by a responsible party who purchased other lands in the vicinity; that the witness declined the proposition because he was merely tenant, and referred the party making the offer to the plaintiff, telling him his residence." The offer was objected to by the defendants, admitted by the court, and a bill of exceptions sealed. The witness testified substantially in accordance with the offer.

The plaintiff testified that the formation of the company was not spoken of to him until after Negley had been on the land, and three or four weeks after the article had been signed; when he signed for $1000 the agreement was to form a company, not to sell the land. He testified that in October 1865 he met J. S. Negley in Pittsburg, who said that he, Negley, understood plaintiff wanted some money; plaintiff said he did, he wanted $500 on the article; J. S. Negley said G. G. Negley would be in on a day named, and told plaintiff to bring the article; plaintiff brought the article, and G. G. Negley said he would pay him $500 if he would enter into a new contract in which plaintiff was to become one-fifth partner; plaintiff declined; G. G. Negley said if plain-

[Negley *v.* Lindsay.]

tiff would not accept that, he might have some trouble; that none of the defendants notified him that they would not take the land till they refused the deed.

The following are points submitted by the plaintiff and their answers:—

5. If the jury believe from the evidence that James S. Negley, one of the defendants, by arrangement with his co-defendants and at their instance, on or about the 12th day of March 1865, visited the said Lindsay farm for the purpose of examining and inspecting it, and he did so inspect and examine the same, it was the duty of the defendants to repudiate the contract within a reasonable time, if they were dissatisfied with their bargain, and if, after such visit and examination, the defendants treated the contract with the plaintiff as in full force, and dealt with the farm as their own, they waived the right to rescind the contract.

Answer: " Affirmed, with the following explanations and qualifications: It is for the jury to say, under the evidence bearing upon that question, whether James S. Negley, at the time he visited this farm, discovered or should have discovered or learned from his inspection of the land and from what he heard and saw then and there, that this land was not what it was represented to be in relation to its character as oil-land, assuming that you believe the defendants' allegations as to the representation made. In regard to this question you must consider the evidence in relation to the length of time Negley was at and about the farm, and what he did and saw there calculated to give him knowledge that this land was not oil-land of the character stated. If, however, you should find James S. Negley did discover, or, as an ordinarily intelligent man could and should have learned, that this land was not as represented, and afterwards went to work and tried to get up an oil company in relation to it, as owner of it, he treated this sale as valid and binding, and he could not subsequently repudiate the contract, and plaintiff should have a verdict in his favor.

" The whole question upon this point turns upon your conclusion as to whether or not Negley acquired such knowledge by his visit to this land, as should have, by the exercise of reasonable care and intelligence on his part, informed him that this land was not as represented to be, in relation to materials and matters going to make up its value for the purpose for which it was sold, and which induced defendants to make the contract. If such was the case, and he went there for the purpose of making investigations, at the instance of all the defendants, and acting for them in the premises, and then having either discovered that there had been material misrepresentations made by plaintiff, or, having the opportunity to do so, carelessly or recklessly shut his eyes to what was apparent, and jumping at a conclusion, went on and acted

[Negley *v.* Lindsay.]

under the contract, and took the risk upon himself, then he affirmed the contract, and cannot now turn around and repudiate it. So even if he discovered, or by reasonable care might have discovered, that these misrepresentations had been made by plaintiff, and then neglected to rescind and give notice that he did so to the plaintiff, as soon as circumstances would reasonably permit, he loses his right afterwards to turn around and repudiate it. When the right to rescind a contract springs from discovered fraud, the defrauded party must rescind as soon as circumstances will reasonably permit, and must not go on with the contract, after the discovery of the fraud, so as to increase the injury necessarily caused to the vendor by rescission. If he rescinds for fraud he must do so as soon as he reasonably can after the discovery of the fraud, for he is not bound to rescind at all, and any unnecessary delay, especially if it be injurious to the other party, would be regarded as a waiver of his right. The same consequences will flow from his continuing to treat the property which was sold fraudulently as his own. The mere lapse of time, if it is considerable, tends to establish a waiver, and is to be considered by the jury upon this question of waiver, and if it be connected with an obvious ability on the part of the defrauded to discover the fraud at a much earlier period, by ordinary care and intelligence, would make the case still stronger. This matter, then, is for you to determine, under these general suggestions upon the evidence bearing upon this question.

"Assuming the misrepresentations, as alleged by the defendant, did defendants, by their *agent* Negley, waive the right to take advantage of the fraud, but subsequently, when they had knowledge of the fraud or had a reasonable opportunity to discover it, decline to do so, and proceed to do acts in regard to the property inconsistent with the repudiation of the contract?(and we must state in this connection, that any act of the defendants, such as obtaining a right to bore for the defendants, or attempting to get up an oil company, upon the basis of owning the land under this contract, which should not have been done in regard to the property, if the contract had not existed, would be such). If so, they have waived the right to rescind."

6. If the jury believe from the evidence that James S. Negley, one of the defendants, by arrangement with his co-defendants, and at their instance, on or about the 12th day of March 1865, visited the said Lindsay farm for the purpose of inspecting and examining it, and he did so inspect and examine said farm at or about said date, and after such inspection and examination he obtained from Jacob Buzzard, the tenant in possession, the privilege of boring for oil, and authorized the said Buzzard to sell the said land at $100 an acre, and the defendants did not notify the plaintiff of their intention to be off from the contract until after the

[Negley v. Lindsay.]

failure of McLain & Co. to get up an oil company for them, the right of the defendants to rescind the contract, on the ground of the alleged misrepresentations, was waived.

7. If the jury believe from the evidence that James S. Negley, one of the defendants, by arrangement with his co-defendants, and at their instance, on or about the 12th day of March 1865, visited the said Lindsay farm for the purpose of inspecting and examining it, and he did so inspect and examine said farm, at or about said date, and after such inspection and examination he obtained from Jacob Buzzard, the tenant in possession, the privilege of boring for.oil, and authorized the said Buzzard to sell the said land at $100 an acre, and after his return to Pittsburg said James S. Negley signed the prospectus for an oil company which had been prepared at the office of B. McLain & Co., and none of the defendants notified the plaintiff of their intention to be off from the contract until after their failure to get up said oil company, the attempted rescission by the defendants was too late.

Answer: "Both answered in answer to the 5th point."

8. If the jury find the facts in reference to James S. Negley's visit to and examination of said land to be as stated in last point, and that none of the defendants notified the plaintiff of their intention to be off from their contract until after the failure of B. McLain & Co. to get up the oil company, and not until the plaintiff tendered to the defendants a deed on the 7th day of March 1866, the then refusal and attempted rescission were too late.

Answer: "If you find that Negley discovered the fraud or misrepresentations (if such there were), or could and should have discovered it, and neglected or refused to do so, then this point is affirmed."

The following were points of the defendants and their answers:—

1. "The contract sued upon having been made in this county, and being of that class required by the law of this state to be in writing, it is imperfect and void, because its subject is imperfectly and insufficiently defined, and therefore the plaintiff cannot recover."

2. "The deed tendered by plaintiff to defendants is imperfect and insufficient in its description of the land intended to be conveyed, and the defendants were not bound to accept said deed, therefore plaintiff cannot recover in this suit."

3. "This being in. effect an action to compel the specific performance of a contract for the sale of land, and the plaintiff having failed to show or prove any title to the land, he cannot recover, and the jury should find for defendants."

These points were refused.

4. "This action of debt is employed by the plaintiff to perform the office of a bill for specific execution of the written agreement sued on, and if the jury are satisfied from the evidence that the

said contract is unconscionable in respect to the price stipulated to be paid for the land, and that the defendants relied on the plaintiff's unfounded assertions, and were thereby induced to make the contract, they should find for the defendants."

Answer: "Affirmed, except the first clause, which is declined as immaterial to this case."

10. "If the jury are satisfied from the evidence that the plaintiff, at the residence of one of the defendants in this county, represented to the defendants, that the land in Wood county, West Virginia, was first-rate oil territory and very valuable, when in fact it was not first-rate oil territory, and was of little value for any use or purpose; and if such representations as to its value were the main inducement to the purchase of said land by the defendants, and if the defendants had no personal knowledge of the land, but relied on the plaintiff's representations, the plaintiff cannot recover, and the jury should find in favor of the defendants."

Answer: "Affirmed, unless you find that defendants waived their right to rescind when they undertook to do so."

The court further charged:— * * *

"Then were the statements regarding the character of this farm made as claimed by defendants? If you should find they were so made, then did defendants enter into this contract, relying upon the representations and assurances made and given by plaintiff at the time it was executed? Or was it not made under the influence of such representations, but entered into by defendants uninfluenced by them, if made, but from other considerations of whatever character, whether speculative or otherwise? If you find the latter, your verdict should also be for plaintiff; but if you find the former, that is, that defendants were induced to purchase by plaintiff's representations, then, if you find they were false and material, your verdict should be for defendants, *unless* you find that the defendants [and you are to treat the act of James S. Negley as that of all the defendants, if you believe what he did was under their directions] had by their subsequent conduct waived their right to repudiate the contract previous to the time they attempted to do so. But if you should find (under the instructions of law already given upon this subject), that defendants have lost such right of repudiation or rescission, your verdict should be for plaintiff, even though you should find fraud or misrepresentation on part of plaintiff. But if you find *no waiver*, and fraud or material misrepresentations, your verdict should be for defendants."

The verdict was for the plaintiff for $12,127.12.

The defendants took a writ of error and assigned for error:

1. Admitting the deed.
2. Refusing a nonsuit.
3. Admitting the testimony of Buzzard as excepted to.

[Negley v. Lindsay.]

4 and 5. The answer to the plaintiff's 5th, 6th and 7th points.

6. The answer to the plaintiff's 8th point.

7, 8 and 9. Refusing the defendants' 1st, 2d and 3d points.

10. The answer to the defendants' 4th point.

11. The answer to the defendants' 10th point.

12. The extract from the charge given above.

*A. M. Brown* and *T. M. Marshall,* for plaintiff, in error.—Specific performance will not be enforced, unless its terms are clear and capable of ascertainment from the instrument itself: Soles *v.* Hickman, 8 Harris 180; Hammer *v.* McEldowney, 10 Wright 334; Martin *v.* Duffey, 4 Phila. Rep. 75. Such a description as that in the deed offered, would be bad after verdict: Hagey *v.* Detweiler, 11 Casey 409; O'Keson *v.* Silverthorn, 7 W. & S. 246; Smith *v.* Webster, 2 Watts 478; Adams *v.* Williams, 2 W. & S. 227; Espy *v.* Anderson, 2 Harris 308; Martin *v.* Hammon, 8 Barr 270; Rawle on Covenants for Title 430–431 and Note 2; Dalzell *v.* Crawford, 1 Parsons' Reports 45. The contract was fraudulent and therefore void and could not be confirmed by subsequent acts or declarations: Duncan *v.* McCullough, 4 S. & R. 482.

*M. W. Acheson,* for defendant in error.—The representations alleged were no defence: Watts *v.* Cummins, 9 P. F. Smith 84. The description was sufficient: Richardson *v.* Stewart, 2 S. & R. 84; Banks *v.* Ammon, 3 Casey 172; Simpson *v.* Breckenridge, 8 Id. 287; Siegel *v.* Robinson, 6 P. F. Smith 19. The vendor was not bound to show title: 2 Hilliard on Vendors 17; Snevily *v.* Egle, 1 W. & S. 484; Hite *v.* Kier, 2 Wright 72. As to rescission and waiver: 2 Parsons on Contracts 276–279; Kingsley *v.* Wallis, 2 Shepley 57; 1 Sugden on Vendors 277; Pearsoll *v.* Chapin, 8 Wright 9.

The opinion of the court was delivered, January 16th 1871, by

SHARSWOOD, J.—The 1st assignment of error is to the admission in evidence of the deed of Lindsay and wife to the defendant, dated March 3d 1866, and the 7th and 8th errors to its effect when admitted. The objection was to the insufficiency of the description of the premises conveyed. "All that certain tract or parcel of land situate in Wood county, West Virginia, located on Little Stillwell creek, between three and four miles from the Baltimore and Ohio Railroad, on the National turnpike." The abutters on the west and north are then given, but those on the east and south are left in blank; and it then adds, "and contains 180 acres, more or less, and now occupied by Jacob Buzzard as tenant." Primâ facie such a description was certain enough, and there was no error, therefore, in the admission of the deed. It

17 P. F. SMITH—15

followed the description as contained in the article. It might have been competent to the defendant to have shown by parol evidence that it was insufficient to identify the tract, but that would be a question subsequent to its admission : Richardson *v.* Stewart, 2 S. & R. 84. No such evidence was given. The 2d assignment is in overruling the defendant's motion for judgment of nonsuit. But it is perfectly well settled, that a refusal to direct a nonsuit to be entered is not the subject of review on a writ of error : Girard *v.* Gettig, 2 Binn. 234; Bavington *v.* Pittsburg and Steubenville Railroad Co., 10 Casey 358; The United States Telegraph Co. *v.* Wenger, 5 P. F. Smith 262.

The 3d error assigned is to the admission of a part of the evidence of Jacob Buzzard, in which he was allowed to testify that he had received an offer for the purchase of the land in controversy, at the price of $14,000, from a responsible party, who purchased other land in the vicinity. This evidence was certainly inadmissible. If it showed the opinion of the person who made the offer, it was mere hearsay.

If the value of the land or other thing could be proved in this way, nothing would be easier than to manufacture abundance of such testimony.

The 4th, 5th, 6th, 10th, 11th and 12th assignments may be considered together. They are to answers to points, and to the charge of the learned judge below, all involving substantially the same question. One defence set up was that the plaintiff had been guilty of fraudulent misrepresentations as to the character and value of the land which was the subject-matter of the contract of sale. There was evidence that Gen. Negley, one of the defendants, after the contract had been made and signed, as agent, and on behalf of the others, had visited and examined the property. The learned judge held, and so instructed the jury, that if they found this to be so, and that Gen. Negley became acquainted, or had the opportunity of becoming acquainted with the true state of the facts, the defendants were bound to give notice to the plaintiff, within a reasonable time, of their rescission of the contract, and if they waited until after they had attempted and failed to get up an oil company to take the land, they could not avail themselves of this defence. It was decided, indeed, in Duncan *v.* McCullough, 4 S. & R. 487, that when a contract is in itself fraudulent, it is void, and cannot be confirmed by any subsequent declarations or acts by which its fairness is acknowledged. "Where there has been actual and positive fraud, or the adverse party has acted malâ fide, there can be no such thing as a confirmation; what was once a fraud will always be so. The reason of the distinction is, that a contract infected with that kind of fraud, which must be proved and not presumed from the circumstances of the parties, is not merely voidable but void;

[Negley v. Lindsay.]

and confirmation without a new consideration would be nudum pactum." Per Gibson, J. This decision has been recognised and affirmed in Chamberlain v. McClurg, 8 W. & S. 31; Goepp's Appeal, 3 Harris 428; Miller's Appeal, 6 Casey 478. Yet there are some cases not easily reconciled with this broad doctrine, as in Juniata Bank v. Brown, 5 S. & R. 234, where Chief Justice Tilghman said: "To make a confirmation of a contract, in which a man has been defrauded, very strong facts must be shown; and, particularly, it must appear that those acts were done with full knowledge of the truth." In Staines v. Shore, 4 Harris 200, which was the case of fraud in the sale of a horse by auction by the employment of a puffer, Chief Justice Gibson said: "Had the horse lived, in this case, it would have been necessary to return or tender him to the vendor as soon as the fraud was discovered;" implying that if he was kept on hand and used by the vendee—much more, if he had tried to sell him at a greater price than he had given for him, and only on finding that he could not, offered to return him—the defence of fraud would not avail him. Judge Baldwin, who may be regarded as belonging to our own judiciary, in Blydenburg v. Welsh, Baldw. 338, held, that if, after a party has acquired a knowledge of facts tending to affect a contract with fraud, he offers to perform it, on a condition which he has no right to exact, he thereby waives the fraud and cannot set it up in an action on the contract. "This," said he, "is a waiver of the objection to the contract on the ground of fraud, if he was informed of all matters which bore upon that question; if he remained ignorant of them it is no waiver." The authorities cited by Mr. Justice Gibson in Duncan v. McCullough, of Ardglass v. Munbaugh, 1 Vern. 237, and Wiseman v. Beake, 2 Vern. 121, are those of young heirs dealing with their expectancies, "catching bargains," where the contract has been held void on the ground of public policy, and as is remarked by Mr. Justice Story (1 Eq. Jur. § 337), "the aim of the rule is chiefly directed to prevent deceit and imposition upon parents and other creditors." Of these cases, Lord Hardwicke remarks, the same fraud attended the confirmation as the original bargain. Baugh v. Price, 1 Wilson 320, was a case of the same kind, and it is there expressly put on the ground that the contract was void as against public policy. Brooks v. Gally, 2 Atk. 34, which he also cites, can hardly be said to to support him; for it was a claim for wines and liquors furnished to a school-boy, and a note given by him for the amount, a few days after he came of age.

Of course where a contract is void on the ground of public policy, or against a statute, as the usury law, there is every reason to hold the confirmation affected with the original taint: Shelton v. Marshall, 16 Texas 344. Certain it is, that the doctrine that a contract, void on account of fraud practised on the party,

[Negley *v.* Lindsay.]

is incapable of confirmation, is not the generally received doctrine of the elementary writers: 1 Story's Eq. Jur. 345; Addison on Contracts 273; 1 Sugden on Vendors 276; 2 Parsons on Contracts 780. But however this may be, we must now consider Duncan *v.* McCullough as overruled by Pearsoll *v.* Chapin, 8 Wright 9, in which it was expressly decided that a contract tainted with fraud may be confirmed or ratified without a new contract founded on a new consideration. It is there said that he who knowingly accepts and retains any benefit under such a contract, or who uses the property acquired as his own, after the discovery of the fraud, or who does any positive act forgiving the fraud, or unduly delays claiming back his property or giving up what he received, affirms the validity of the contract; and decisions in the courts of our sister states are cited in support of these instances. To which may be added James *v.* Emery, 40 N. Hamp. 348; Mason *v.* Bovet, 1 Denio 69; The Mattiawan Co. *v.* Bentley, 13 Barbour 641; Wheaton *v.* Baker, 14 Id. 594.

"Ratification," says Chief Justice Lowrie, "is in general the adoption of a previously formed contract, notwithstanding a view that rendered it relatively void; and by the very nature of the act of ratification, confirmation or affirmance (all these terms are in use to express the same thing), the party confirming becomes a party to the contract, he that was not bound, becomes bound by it, and entitled to all the proper benefits of it; he accepts the consideration of the contract as a sufficient consideration for adopting it, and usually this is quite enough to support the ratification. A mere ratification cannot, of course, correct any defect in the terms of the contract. If it is in its very terms invalid for want of consideration or for any other defect, a mere ratification can add nothing to its binding force." These principles are only a recurrence to those advanced by Lord Chancellor Hardwicke in Chesterfield *v.* Janssen, 2 Ves. 125, 1 Atk. 354, the result of which was, that if the original contract be illegal or usurious, no subsequent agreement or confirmation of the party can give it validity. But if it be merely against conscience, then, if the party, being fully informed of all the circumstances of it, and of the objections to it, in his own words, "with his eyes open," voluntarily confirms it, he thereby bars himself of that relief, which he might otherwise have had in equity: 1 Fonblanque's Eq. b. 1, ch. 2, s. 13, n. Upon the principles thus established we discover no error in the rulings of the learned judge below upon this subject.

The 9th assignment of error remains to be examined. It presents the question, whether, under the pleadings, it was incumbent on the plaintiff to prove that he had a clear, indisputable title in fee simple to the land which he contracted to sell the defendants. The form of action was debt, and not covenant, as is more usual in such cases; but it can make no difference what is the

[Negley v. Lindsay.]

form of action. The declaration alleged that the plaintiff had on his part duly kept and observed the agreement, and hath at all times been ready and willing to do and perform all things required of him in and by said agreement. Besides the general pleas of *non est factum* and *never indebted*, the defendants pleaded, amongst other special pleas, that the plaintiff was not, at the date of the said agreement, and is not, seised of the said tract of land in the said declaration and agreement mentioned. This was not a plea in confession and avoidance, but a traverse of the averment in the declaration of the plaintiff's performance and readiness to perform. This meets and satisfies those cases which appear to hold it to be necessary, at least in an action of covenant, in which there is strictly no general issue, that the plaintiff by the pleading should have notice that he would be called on to prove his title: Snevily v. Egle, 1 W. & S. 484; Martin v. Hammon, 8 Barr 270; Espy v. Anderson, 2 Harris 308; Hite v. Kier, 2 Wright 72.

I do not propose therefore to discuss this case, nor to inquire whether under the general issue of *nil debet*, or never indebted in this action, it was incumbent on the plaintiff to meet this proof. That under such a traverse as was put in here, it was so, is abundantly clear. In Dearth v. Williamson, 2 S. & R. 498, which was a covenant to make a lawful deed of conveyance, Chief Justice Tilghman said, "The plaintiff was to make a lawful deed of conveyance, for which he was to receive the full value of the land. It does not appear that the plaintiff had any title whatever." In Heron v. Hoffner, 3 Rawle 400, Mr. Justice Kennedy says: "I apprehend that the vendor when he proceeds to recover the purchase-money, ought at least to show that he had it in his power to make a good title, because he will be bound to make it upon payment of the purchase-money. It would be gross injustice were it otherwise." Again: In Smith v. Webster, 2 Watts, the same learned judge said: "This action being carried on for compelling payment of the purchase-money, they (the plaintiffs) ought to have shown that they had it in their power to make an indefeasible title in fee for the land." How can a defendant show defects in the plaintiff's title unless it is produced to him? It is not enough to say that he may resort to the records. He must have some clue to trace it there. Besides, there are many necessary facts as to which the records will give him no information, such as descents under the intestate laws, the death of tenants for life, and others of a similar kind. It may not be necessary for him to produce his deeds or furnish an abstract of his title before commencing his action, but surely the *onus* is upon him to prove his right to the purchase-money, which it is clear that he has not, unless he can convey a perfectly good title, or the vendee has specially agreed to accept only such title as he has. If this is not so, the vendee may be compelled

to pay for moonshine; and this, as Mr. Justice Kennedy says, would be gross injustice.

We think, therefore, that the learned judge below committed an error in his answer to the defendant's 3d point, and that the plaintiff having failed to show any title to the land which he had contracted to convey, he was not entitled to recover.

Judgment reversed, and a *venire facias de novo* awarded.