# Chulek *v.* United States Fire Insurance Company, Appellant.

*Insurance—Fire insurance—Pleading—Statement of claim.*

Where in an action on a policy of fire insurance, covering a building and furniture, the plaintiff in his statement of claim avers the right to recover the whole amount of the insurance both that on the building and that on the furniture, without setting forth specifically the loss upon the building and that upon the furniture, the statement may be amended so as to show the amount of the loss upon the two classes of property. In such a case the amendment introduces no new cause of action.

*Insurance—Fire insurance—Sole and unconditional ownership.*

Where a policy of fire insurance provides that the contract shall be void if any change shall take place in the interest, title or possession of the subject of the insurance, a conveyance by the insured to a third person followed by a conveyance by such person to the insured's wife, will constitute a violation of the covenant; and this is the case although the insured and his wife and the person through whom the conveyance was made to the wife unite in testifying that the deed by the insured was the result of a fraudulent conspiracy between the insured's wife and such third person.

In the above case it appeared that the deed from the insured was executed during a short interval between the expiration of the lien of a judgment and the revival of the same. *Held,* that the record of the judgment was admissible in evidence to show a motive for the conveyance to the insured's wife, and to contradict the testimony as to the conspiracy.

Argued Jan. 11, 1906. Appeal, No. 18, Jan. T., 1906, by defendant, from judgment of C. P. Lackawanna Co., March T.,

1904, No. 670, on verdict for plaintiff in case of Elko Chulek v. United States Fire Insurance Company. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Assumpsit upon a policy of fire insurance. Before EDWARDS, P. J.

The facts are stated in the opinion of the Superior Court.

The court charged in part as follows:

[Then comes the evidence of the defense as to the judgment entered by Mendlesohn. It seems that the plaintiff in this case owed, or we presume that he owed, a man by the name of Mendlesohn in Mayfield, a certain sum of money, amounting to something over $100, and that Mendlesohn had the judgment against him in 1897, and that this judgment had been on record quite a number of years and that a scire facias was issued to revive the judgment in 1892. Now you see the purpose of that testimony, and it is a mere circumstance, and I admitted it because it was a mere circumstance, and not because of its own effect without other circumstances connecting it with this case to have any probative value at all. The point they want to make is that Mendlesohn was trying to collect this judgment somewhere about the fall of 1902, and therefore that this transfer was made of the property from the plaintiff to his wife, it happening about the same time. Now if it was only a mere coincidence, if the fact that this transfer occurred or this change in the title of the property was made about the same time as the five years expired as to the lien of the judgment, if it was a mere coincidence, it has no bearing on this case at all, and it has very little bearing at any rate, because there is nothing here in evidence to show that this plaintiff did not have other property, that is, there is nothing here to show that he did not own another lot or two lots or a dozen lots, so far as this claim of Mendlesohn is concerned. Mendlesohn is not here complaining or making any claim. At any rate it may be argued on the part of the plaintiff even as to this Mendlesohn claim, that the lot is still there, the fire didn't burn the lot out, he can still collect his money from the lot if it is worth anything. There is no testimony here as to the value of the lot, but you see how

a little circumstance might be evidence and at the same time have very little weight unless you can join it with other circumstances so as to make a chain of circumstances or make the whole thing of probative value in order to support a contention of one kind or another. I have been particular on this point because I admitted the testimony rather unwillingly and at the same time I saw that it might be a circumstance which should be considered by a jury.] [6]

Defendant presented these point:

1. That the deed from Chulek to Kawash being voidable only and not void, and it not being shown that there was any reconveyance from Kawash or any other person to Chulek, nor any demand made, or steps taken by Chulek to obtain a recission thereof before the fire occurred, the conveyance by Chulek to Kawash and Kawash to Mary Chulek, constitutes such an alienation as, by the terms of the policy, would defeat a recovery and your verdict must be for the defendant. *Answer:* This point is refused. [7]

4. That inasmuch as there was an actual alienation of the property by a deed properly executed, delivered and recorded, and the grantee of the deed was in possession of the property at the time of the fire, under a claim of right, which she could enforce against the defendant in this case or any other, save only the plaintiff, that in so far as the rights of the defendant are concerned, it is immaterial whether the deed was obtained by fraud or not, and your verdict should be for the defendant. *Answer:* The fourth point is refused without reading. [9]

5. That if this deed was obtained by fraud, it was fraud of a third party, and cannot affect the rights of the defendant in this case, nor enable the plaintiff to escape the conditions of the policy. *Answer:* The fifth point is refused without reading. [10]

Verdict and judgment for plaintiff for $1,100. Defendant appealed.

*Errors assigned* were (1, 2) in allowing the statement of claim to be amended; (6, 7, 9, 10) above instructions, quoting them.

*H. S. Harding* and *H. W. Mumford,* for appellant.—An amendment introducing a new cause of action will not be per-

mitted: Keasby v. Donalson, 2 Browne, 103; Grier Bros. v. Assurance Co., 183 Pa. 334; Noonan v. Pardee, 200 Pa. 474.

There can be no question that, in the absence of the fraud alleged by the plaintiff in the procurement of the deed, this conveyance was sufficient to avoid the policy: Bemis v. Insurance Co., 200 Pa. 340; Kompa v. Insurance Co. 28 Pa. Superior Ct. 425.

A deed obtained by fraud is voidable at the instance of the party defrauded, but not void ab initio: Washburn on Real Property, sec. 2223; Mitchell on Real Estate, page 478.

This rule has been followed by our Supreme Court in numerous cases: Pearsoll v. Chapin, 44 Pa. 9; Negley v. Lindsay, 67 Pa. 217; Christy v. Sill, 95 Pa. 380; Lyon v. Phillips, 106 Pa. 57; Keller v. Lamb, 202 Pa. 412; Inlow v. Christy, 187 Pa. 186; Acetylene Co. v. Smith, 10 Pa. Superior Ct. 61.

The fraud set up was the fraud of a third party, with which the defendant had nothing to do, and could not in any way affect the rights of the defendant: Compton v. Bunker Hill Bank, 96 Ill. 301; Sprugin v. Traub, 65 Ill. 170.

*A. A. Vosburg,* with him *H. D. Carey* and *John R. Edwards,* for appellee.—The amendment was proper: Wilhelm's App., 79 Pa. 120; Rodrigue v. Curcier, 15 S. & R. 81.

A void sale is manifestly not within the terms of the policy: Wood on Insurance, section 326; Strong v. Insurance Co., 27 Mass. 40; Kitterlin v. Insurance Co., 10 L. R. A. 220; Horn v. Keteltas, 46 N. Y. 605; Barry v. Ins. Co., 110 N. Y. 1 (17 N. E. Repr. 405); Hodges v. Ins. Co., 8 N. Y. 416; Smith v. Ins. Co., 50 Me. 96; Gerling v. Ins. Co., 39 W. Va. 689 (20 S. E. Repr. 691); Ins. Co. v. Spankneble, 52 Ill. 53; Pearman v. Gould, 42 N. J. Eq. 4 (5 Atl. Repr. 811); Howard Fire Ins. Co. v. Bruner, 23 Pa. 50.

OPINION BY PORTER, J., March 12, 1906:

The assignments of error which refer to the allowance of the amendment of plaintiff's statement are not well founded. The statement as originally filed claimed of the defendant, " the sum of eleven hundred dollars, according to a certain policy of insurance, in writing . . . . a copy of said policy is hereto attached and made part hereof." Under the provisions of the

policy attached the defendant contracted to idemnify the plaintiff against loss by fire, " to an amount not exceeding eleven hundred dollars, to the following described property, while located and contained as described herein, and not elsewhere, to wit : . . . . $1,000 on the two-story frame building . . . . occupied as a dwelling and situated west. side May street, Mayfield, Pa.; $100 on household furniture . . . . while contained in the above described building." The statement further averred that the plaintiff had performed all the conditions on his part to be performed, and " That on the 14th day of November, 1903, at Mayfield, Pa., the premises in said policy of insurance mentioned were destroyed by fire." This original statement was not specific, in that it did not state the details of the claim, the amount of the loss upon the building and that upon the personal property, and for that reason was not technically accurate, yet it did aver the right to recover the whole amount for which the defendant company had insured the property, both building and furniture. That statement did not aver a loss of $1,100 upon the building, nor how much of the loss was due to the destruction of the building and the personal property respectively. A fair interpretation of its meaning was : " You agreed to insure me against loss by fire in the sum of $1,100, $1,000 of said amount upon my dwelling house and $100 upon my household furniture, so long as it remained in that house; the house has been destroyed by fire, and I now assert the right to recover, under the covenants of your policy, the entire amount for which you agreed to become liable, upon both building and furniture." This was an assertion of the right to recover the amount of the insurance on both building and personal property, the amendment of the statement so as to make it formally declare that both building and personal property had been destroyed by the fire introduced no new cause of action, it adhered to the covenants originally declared upon and did not go outside of the policy : Rodrigue v. Curcier, 15 S. & R. 81 ; Wilhelm's Appeal, 79 Pa. 120. Had the original statement specifically declared for a loss of $1,100 upon the building alone, a different question would have been presented. The first and second specifications of error are dismissed.

The policy of insurance was dated and issued August 28,

1901, and contained the following covenants: " This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if . . . . the interest of the insured be other than unconditional and sole ownership; or if the subject of insurance be a building on ground not owned by the insured in fee simple; or if any change, other than by the death of an insured, shall take place in the interest, title, or possession of the subject of insurance (except change of occupants without increase of hazard) whether by legal process or judgment or by voluntary act of the insured, or otherwise." There was no agreement indorsed upon or added to the policy modifying or waiving these covenants.   There was no evidence that the company or any of its agents had, until after the fire, knowledge or notice that the interest of the insured in the building was other than unconditional and sole ownership, at the time the policy issued, or that there had been any subsequent change in the interest, title or possession of the subject of insurance, so far as the building was concerned.   The plaintiff, presumably for the purpose of showing the title under which he held the land, offered in evidence a deed, to him, from the Hillside Coal & Iron Company, dated July 9, 1902, more than ten months after the contract of insurance was effected.   Unless the plaintiff had title to the land prior to the date of that deed the policy of insurance was void from the day it issued, and never became operative.   That question does not seem to have been raised in the court below, however, and we need not consider it.

The plaintiff and his wife, Mary Chulek, by deed dated December 2, 1902, and recorded on January 2, 1903, conveyed the lot of land and the building insured, which stood upon it, to Michael Kawash; who by deed dated January 2, 1903, and recorded February 18, 1903, conveyed the same to Mary Chulek, the wife of plaintiff.   The record title was, by force of these deeds, vested in Mary Chulek and so continued until after the fire, on November 14, 1903, and down until the time of the trial in the court below, the plaintiff having taken no steps to set aside those conveyances.   The defendant company offered these deeds in evidence and contended that there had been a change in the " interest and title of the subject of insurance," within the meaning of the covenant of the policy above recited,

and that the policy had for that reason ceased to bind the company, as to the building.   The court admitted evidence on the part of the plaintiff, under objection and exception, that he had been induced to execute the deed to Kawash by the fraud of his wife and the grantee ; that his wife, Mary, had importuned him to convey the property to her and upon his refusal to do so she and Kawash had procured him to execute the conveyance to the latter, by representing that it was a lease.for the property ; that plaintiff did not understand the English language and was not aware of the contents of the paper which he executed, and that Kawash represented to him, at the time of the execution, that the instrument was a lease.   There can be no doubt under the evidence that the plaintiff did actually execute the instrument, which was in fact a deed of the property to Kawash. The court instructed the jury that if the plaintiff executed the deed under the belief that he was signing a lease, that said belief was induced by the false and fraudulent representations of the grantee therein ; that the deed from the grantee to the wife was made in pursuance of a fraudulent conspiracy between this grantee and the wife for the purpose of procuring a transfer of the title from the husband to the wife, and that the plaintiff did not learn until after the fire that he had signed the deed for the property ; then there was no such passing of. the ownership or transfer of the title from the plaintiff as would void the policy, and under these instructions there was a verdict for the plaintiff for the whole amount of his claim.

The ease with which the solemn covenants of a contract may be swept away is illustrated in this case.   The only testimony tending to establish the fraudulent character of the deed was that of the plaintiff who made it and that of his wife and Kawash who are alleged to have perpetrated the fraud which induced its execution.   The plaintiff testifies he was deceived and his wife and his friend Kawash brazenly testify that they were guilty of a fraud, and as a consequence the insurance company, which was no party to the fraud, is deprived of the benefit of a condition upon which its liability was by its contract made to depend.   The whole fabric of the allegation of fraud is founded upon the assertion that the plaintiff was ignorant of the English language, and did not know that he was signing a deed, yet he has lived in this country for eighteen years and

this deed was executed in the office of a reputable lawyer and acknowledged at the office of a justice of the peace, and at both of said places it was stated to be a deed. The case was tried almost a year and a half after the fire occurred, at which time the plaintiff had notice of the condition of the title, yet down to the time of the trial he had taken no step to set the conveyance aside, nor was there a scintilla of testimony from which it could be inferred that he ever intended to set it aside.

The fraudulent acts which are alleged to have induced the conveyance by plaintiff affected individual interests only; the deed was not void but voidable only as to Chulek, who must exercise his election to reclaim the property within a limited time, or the title which passed under the deed will, by virtue of the Act of April 22, 1856, sec. 6, P. L. 532, become indefeasible. As against a bona fide purchaser for value and without notice of the fraud, the right of Chulek to set aside the deed could not even now prevail. Such transactions are only relatively void, not so void as to prevent the party intended to be injured by the fraud from renouncing the privilege which the law allows him of rejecting the transaction altogether, or from ratifying it, and thus making it his own: " And not so void as to make the wrongdoing party a trespasser for acting under it, or as to be no inconvenience or obstruction to the party seeking to be restored to his rights, especially if it has been in whole or in part performed: " Pearsoll v. Chapin, 44 Pa. 9; Negley v. Lindsay, 67 Pa. 217; Christy v. Sill, 95 Pa. 380; Lyon v. Phillips, 106 Pa. 57; Inlow v. Christy, 187 Pa. 186.

Chulek was, prior to the execution of the conveyances which vested the legal title in his wife, the " unconditional and sole owner " of the building, which was " on ground owned by the insured in fee simple; " and it was necessary that he should be so in order to comply with one of the conditions of the policy above recited. Did the conveyances which vested the title in his wife work any change in the interest, title or possession of the insured in the subject-matter of the insurance, within the meaning of the above recited covenants of the policy? Assuming that the conveyances were procured through the fraud of the wife of the insured and Kawash, what was their effect upon the interest of the insured in the property? The convey-

ances vested in the wife of the insured the right to act under them without becoming a trespasser, and they were an inconvenience and obstruction to the plaintiff had he sought to be restored to his rights; his interest in the property had been reduced to the privilege which the law allows him of ratifying or rejecting the conveyances, and in case he took the latter course he must assert the right within the period and establish it in the manner prescribed by the act of 1856: Pearsoll v. Chapin, 44 Pa. 9; Negley v. Lindsay, 67 Pa. 217. The title, which had been absolute and indefeasible at the time the policy issued, was by the conveyances made uncertain and dependent, as to the interest of the assured, upon future events. The defendant company had an unquestionable right to protect themselves from being drawn into such uncertainties as to ownership, by proper covenants in their contract, and we are convinced that the covenants of this policy give them such protection.

There had been a change of interest in and title to the property, within the meaning of the contract. It was the privilege of the company to decline to issue the policy, unless the insured agreed that his right to indemnity should be subject to the stipulated condition. The parties were competent to contract, and, in the absence of proof of waiver or grounds of estoppel, the policy is the law of the relation of the insurer and insured. That terminated if the condition was broken, and could not be restored without the express or implied assent of the insurer. Unless, therefore, the plaintiff is relieved from responsibility because he was ignorant of the effect of the instrument which he had executed, he is not entitled to recover. In the recent case of McCurdy v. Insurance Company, ante, p. 77, our Brother HENDERSON said, in discussing a condition which avoided a policy: "The question is not one of good faith on the part of the insured, but one of contract, of absolute obligation, under a mutually understood state of facts." The defendant had no power to determine what leases, agreements or deeds the plaintiff might execute, but it had the right to protect itself by its contract against the results of his acts, whether he intended those results or not, so long as the insurer did not induce the acts. The covenant of the policy incorporated for this purpose was in these words: " This entire

policy shall be void, . . . . if any change, other than by the death of an insured, take place in the interest, title, or possession of the subject of insurance (except change of occupants without increase of hazard) whether by legal process or judgment or by voluntary act of the insured, or otherwise." It was against any change in the interest of the insured in the property that the prohibition was directed, and the terms employed were broad enough to cover any change that might occur. The parties agreed that in case there was any change of the interest of the insured, whether by his voluntary act or otherwise, the policy should become void unless the change was thereupon noted. If the plaintiff intended to have the title to the property vested in his wife and for that purpose conveyed it to Kawash, then there was a change by his voluntary act; if he was by fraud induced to execute the deed then there was a change of his interest " otherwise " than by his voluntary act. There was in this instrument no exception in favor of conveyances induced through the fraud of third parties, and the terms used give no room to imply any. The conveyance by Chulek to Kawash and by Kawash to Mary Chulek, constituted such a change of the interest of the insured as, by the terms of the policy, to defeat a recovery, for the loss upon the building: Dornblaser v. Insurance Company, 20 Pa. Superior Ct. 536; Kompa v. Franklin Fire Insurance Company, 28 Pa. Superior Ct. 425; McCurdy v. Insurance Company, ante, p. 77; Finley v. Lycoming County Mutual Insurance Company, 30 Pa. 311. Whether Kawash and Mrs. Chulek had been guilty of a fraud was, as against this defendant, immaterial. " It is idle for a party to execute a solemn deed of conveyance, purporting to be for a large consideration, duly acknowledge and record the conveyance, and then set up the claim that he has not parted with his ownership of the property in any degree:" Bemis v. Insurance Company, 200 Pa. 340. The case last cited must be accepted as in effect overruling: Burkhart v. Insurance Company, 11 Pa. Superior Ct. 280. The seventh, ninth and tenth specifications of error are sustained.

The lien of the Mendelssohn judgment had expired shortly before the day upon which the deed in question bears date, and proceedings to revive it were not commenced until after

that day but before the day when the deed was acknowleged. If the deed was made on the day it bore date and for the consideration which it stated, Mendelssohn would certainly have had difficulty in collecting his judgment. These facts, taken in connection with the evidence of the plaintiff's witnesses to the effect that no consideration was actually paid for the conveyance to Kawash, were proper for the jury to consider in passing upon the truth or falsity of the testimony of the plaintiff, his wife and Kawash. The court admitted the Mendelssohn judgment in evidence, but in charging the jury said that it had very little bearing on the case, and called the attention of the jury to the fact that Mendelssohn was not there complaining, that the lot was still there and Mendelssohn could collect his money from the lot, and that there was no evidence that the insured did not have other property. Mendelssohn was not a party to this suit and had no right to complain at that trial. That the lot was still in its old place is true, but until after this fire the record showed that Mendelssohn had no lien upon it. There was no evidence that the plaintiff had any other property. The record of the judgment was not offered for the purpose of showing that Mendelssohn was entitled to this insurance money, but for the purpose of showing a motive which might have induced the plaintiff to execute a conveyance of his property for an apparently full consideration, when in fact the conveyance was simply for the purpose of having the property conveyed to his wife. The sixth specification of error is sustained.

The judgment is reversed and a venire facias de novo awarded.

HENDERSON, J., dissents.