# Chamberlain *against* M'Clurg.

A contract which is usurious cannot be confirmed so as to make it available to either party.

The settlement of an existing controversy being a good consideration for a contract, a party having a good defence to the payment of his obligation may release it upon an agreement of compromise, and if he do so, he will be thereby estopped from setting it up as a defence afterwards.

A party is not concluded, by his written agreement stipulating the terms and conditions of a loan, from showing by parol evidence that the contract was usurious.

ERROR to the District Court of *Allegheny* county.

William Chamberlain against Alexander M'Clurg.  *Scire facias sur Mortgages.*  Two suits tried together: the first upon a mortgage for $15,000, the other for $5000.  These mortgages had their consideration in the following agreement between the parties:

Agreement made the 28th day of April 1837 between William Chamberlain and Alexander M'Clurg, as follows: Whereas the said William Chamberlain hath assigned to said Alexander M'Clurg William Fryer's bonds and mortgage for $12,500, with interest; William G. Alexander's bond and mortgage for $8666.67, with interest; a ground-rent of $122.50 per annum; John L. Newbold's bond and mortgage for $5000, with interest; Thomas Elmes's and others' bond and mortgage for $5333, with interest; Hugh Tracy's bond and mortgage for $2000, with John F. Bullick's judgment-note for $2000, and William Ford's two notes for $1054; for which bonds and mortgages and other securities, the said Alexander M'Clurg has assigned two bonds and mortgages of James Milliken of $10,000 each, and given two mortgages on Pittsburgh property to said William Chamberlain, for the sum of $20,000, the whole being a loan of $40,000 for three years, with interest, and the said Alexander M'Clurg hath likewise given the said William Chamberlain his note of $40,000 with James M'Clurg's endorsement for three years as a further security.  Now the said William Chamberlain, in consideration of the premises, doth for himself, his executors, administrators and assigns, covenant and agree with said Alexander M'Clurg, his heirs and assigns, that in the event of the said Alexander M'Clurg not being able to collect the said notes at maturity, and after due diligence in their collection, then the said William Chamberlain or his representatives, shall and will renew said note of $40,000 for two years, should the whole amount of mortgages not be collected, or rateably for such amount as should not be collected at maturity.  It is further agreed between said parties that if the previous mortgages or

liens against the premises, upon which the said two mortgages of $10,000 are secured, shall not be paid off within one year and six months from the date hereof, then, and in that case, (if the said William Chamberlain, his executors, administrators and assigns shall require the same), he, the said Alexander M'Clurg, his heirs and assigns, shall give to said William Chamberlain, his heirs and assigns, other and additional adequate securities on approved real estate.

It is further agreed between said parties that the said Alexander M'Clurg shall, at his expense, furnish all the necessary papers and vouchers for making the titles to the Pittsburgh properties and the mortgages thereon to said William Chamberlain satisfactory, together with the expenses of the other transfers and the cost of ample insurance on the Pittsburgh property, all of which, when completed, are to be handed to Samuel J. Curtis, and when so satisfactorily arranged, the assignments of said Fryer's mortgages and bonds, and William G. Alexander's mortgage and bond, shall be handed over to said Alexander M'Clurg or his representatives. The interest on all the mortgages shall be adjusted to May 1st next; and it is further agreed, that the said William Chamberlain or his representatives shall remove the liens of the said Pittsburgh mortgages, whenever requested by said Alexander M'Clurg, upon receiving other approved real security; and for the full performance of the agreements aforesaid, the said parties do hereby bind themselves and their respective representatives. Witness the hands and seals of said parties, the day and year first above written.

The note of $40,000 given by Alexander M'Clurg to William Chamberlain, with James M'Clurg's endorsement for three years, mentioned in the aforesaid agreement, is given up, and a bond and warrant from Alexander and James M'Clurg to William Chamberlain for $20,000 in three years; also three notes, one for $5500, one other for $5500, and the other for $2500, all eighteen months from the first day of May 1837, placed in lieu thereof, judgment upon which bond is not to be entered unless the two mortgages on Pittsburgh property, mentioned in the aforesaid agreement, are not paid at maturity. William Chamberlain agrees that if Fryer's last bond for $4166.67, and Browne, Robb & Company's note for $5333, should not be paid within three years, he will deduct five per cent. from the amount of both, say $9499.67, discount $475.

WM. CHAMBERLAIN.

Witness—Samuel J. Curtis.          ALEX. M'CLURG.

Received May 6th 1837, of Mr Alexander M'Clurg, his six notes, all dated May 1st 1837, each for $1341, one at 6 months, one at 12, one at 18 months, one at 2 years, one at 30 months, and one at 3 years; which notes, when paid, will be in full for interest on two mortgages on property corner of Arch and Broad

[Chamberlain v. M'Clurg.]

Streets, each for $10,000, and certain mortgages on Pittsburgh property to be completed, for $20,000, and a mortgage of James M'Clurg's house in Arch Street, for $4700, making, in all, principal $44,700, and the interest semi-annually $1341.

WM. CHAMBERLAIN.

How this agreement was executed appeared by the following account, in the handwriting of the plaintiff:

ALEXANDER M'CLURG, DR.

| | | | | |
|---|---|---|---|---|
| Fryer & Anderson's Note | | | $24,192 | 24 |
| Interest to May 1st is 3 months | | | 360 | 88 |
| Supplee's Mortgage | | | 5,000 | 00 |
| Interest from February 9th to May 1st, 2 mos. 21 days | | | 67 | 50 |
| Browne, Robb & Co | | | 5,333 | 00 |
| 3 mos. & 11 days Interest to May 1st | | | 89 | 77 |
| Bullick | | | 2,000 | 00 |
| Interest 6 mos. 4 days | | | 61 | 33 |
| Wm. Ford, two Notes, each $527, is | $1,054 | 00 | | |
| Less Interest | 40 | 39 | 1,013 | 61 |
| | | | $38,120 | 33 |
| Morris Longstreth's Note | $1,531 | 50 | | |
| Less Interest | 25 | 25 | 1,506 | 25 |
| Gill, Campbell & Co.'s Acceptance | $185 | 06 | | |
| Less Interest | | 74 | 184 | 32 |
| C. Robb, Note | $255 | 54 | | |
| Less Interest | 6 | 92 | 248 | 52 |
| Joel Cook's Mortgage | $2,500 | 00 | | |
| Interest due on 1st May | 6 | 25 | 2,506 | 25 |
| Balance due Alex. M'Clurg | | | 12 | 33 |
| | | | $42,578 | 00 |

ALEXANDER M'CLURG, CR.

| | | |
|---|---|---|
| Two Mortgages | $20,000 | |
| Discount | 2,235 | |
| | $17,765 | |
| Pittsburgh Mortgages | 20,000 | |
| Int. on Mortgages up to May 1st, $20,000 | 113 | Error |
| Mortgage on House in Arch Street | 4,700 | |
| | $42,578 | |

It appeared in evidence on behalf of the defendant, that previously to the 27th January 1840, the defendant had failed to collect the mortgage and judgment of Tracy and Bullick for $2000, in consequence of prior encumbrances; and this debt was lost; for William Chamberlain, the plaintiff, in reply to a communication of the defendant on that subject, said, " I did not guarantee the claim, I consider that I have no further interest in it." The parties subsequently entered into the following agreement:

This agreement, made this 9th day of March 1840, between William Chamberlain of the one part, James M'Clurg of the

VIII. — 5

[Chamberlain v. M'Clurg.]

second part, and Alexander M'Clurg of the third part, witnesseth, that for the settlement of all variances between the said parties, and for the consideration hereinafter mentioned, they have agreed and hereby do covenant and agree with each other as follows, to wit: The said William Chamberlain is to wait for the principal of the mortgages of said Alexander secured on property in Pittsburgh, for the amounts of $15,000 and $5000, together $20,000, accompanied by the bonds and warrants of said James and Alexander, for three years from the first day of May next, when the same become due; *Provided*, that the interest thereon shall be paid in equal quarterly sums from said date, in the city of Philadelphia, and if not paid within thirty days after the end of any quarter, the principal to be considered due, and judgments on the warrants of attorney may forthwith be entered, otherwise not until the full expiration of said three years.

And as a further and collateral security for the payment of the said debts, the said James M'Clurg hereby assigns, transfers and sets over unto the said William Chamberlain $5000 of the judgment of $40,000 entered by said James against the said Alexander M'Clurg in Allegheny county, and to mark the same to said amount on the record to the use of said William Chamberlain. And the said James hereby covenants with the said William that he hath not heretofore made any assignment of the interest in said judgment hereby assigned, and if the same shall have been done, it shall authorize the said William to proceed for the recovery of the $5000 mortgage held by him by virtue of the bond and warrant of attorney or otherwise.

And the said third and second parties hereby covenant to keep the property subject to said mortgages to William Chamberlain fully insured for the protection of said debts; and a failure to do so shall warrant a proceeding for a recovery of said mortgage debts.

And the said James and Alexander M'Clurg do hereby release and acquit the said William Chamberlain of and from all claims, demands, liabilities and offsets, for any cause whatsoever heretofore existing. In witness whereof the said parties have hereunto set their hands and seals.

WM. CHAMBERLAIN,     [SEAL.]
JAMES M'CLURG,       [SEAL.]
ALEX. M'CLURG,       [SEAL.]

The defendants requested the court to charge the jury:

1. That if they believe that the transaction was intended as a loan of money, that the deduction of $2235 by the plaintiff from the principal sum or from any portion thereof, and the taking of securities for the said principal sum of $44,700, with interest thereon from the date of the transaction, constitutes an usurious transaction, and the said sum of $2235 should be deducted from the plaintiff's claim as of the date of the transaction.

[Chamberlain v. M'Clurg.]

2. That if the jury believe that the transaction was a loan of money, so intended by the parties, and any of the securities, by means of which the said loan was intended to be effectuated by the plaintiff to the defendant, failed to be realized without any default of the defendant, but by reason of an original defect in the security itself, then the defendant is entitled to a deduction on the mortgage for the amount so failing to be realized and his expenses in attempting to collect the same, with interest as of the date of the transaction, and for the expenses as of their date.

3. That if the jury believe that the transaction was intended as a loan of money, and the defendant was necessarily put to any expense in collecting the money due on the securities, by which the said loan was intended to be effectuated, that the defendant is entitled to a deduction for the amount thus necessarily expended by him with interest.

4. That the agreement of 1840, or any acts or declarations of the defendant, cannot operate as a confirmation of the original usurious contract, or render the same valid, so far as relates to the aforesaid sum of $2235, or any other various part.

5. That the said agreement of 1840 cannot operate as a waiver of any legal defence which the defendant then had to the claim of the plaintiff on the mortgages.

The court below instructed the jury in answer to the first point, that inasmuch as the transaction between the parties was partly in writing and partly in parol, it became a matter of fact for the determination of the jury, whether it was usurious or otherwise. If it were an exchange of securities of unequal value known and estimated by the parties in the execution of their agreement, it was a violation of no law and must be carried into effect. But if the parties sought in disguise and attempted to cover a loan of money under a pretence of sale or exchange of securities, then it was usurious and the jury should deduct the amount of the premium as set out in the statement.

In answer to the second point, the court said that the failure of the consideration to the amount of the mortgage and judgment of Bullick and Tracy, if due diligence had been used in its collection, was a good defence to that amount, but that the expense of collection was not available to the defendant as matter of defence.

The third point the court answered in the negative. The fourth and fifth points the court answered in the affirmative.

*M'Candless* and *Biddle,* for plaintiff in error, cited 2 *Call* 92; 4 *Hen. & Munf.* 490; 3 *Wend.* 62; 14 *Eng. Com. L.* 82; 1 *Dall.* 448; 14 *Serg. & Rawle* 291; 5 *Whart.* 446; 1 *Watts & Serg.* 153; 5 *Watts & Serg.* 436; 1 *Serg. & Rawle* 52; *Doug.* 631; 3 *Penn. Rep.* 451; 3 *Whart.* 599.

[Chamberlain v. M'Clurg.]

*Lowry*, for defendant in error, cited 3 *Watts & Serg.* 261, 266; 8 *Cow.* 398, 691; 4 *Serg. & Rawle* 487; *Com. on Usury* 165.

The opinion of the Court was delivered by

Rogers, J.—Whether the contract was usurious is a question of fact that was properly referred to the jury under instruction from the court, to which no exception can with justice be taken. Considering, therefore, as we must do after the verdict of the jury, that the original agreement is usurious, it becomes necessary to examine the effect of the agreement of the 9th March 1840. The principal grounds of defence consist of two distinct items, viz: $2235, the amount alleged to be usurious, and a bond and mortgage of Bullick and Tracy for $2000, which formed part of the consideration of the mortgage on which the suit is brought. The defendant alleges he never received the money due on that mortgage, nor any part of it, although he used due diligence to recover it. To avoid error the points of defence must be kept separate and distinct.

As to the first, we think it very clear that the agreement cannot operate as a confirmation of the original contract so as to estop the defendant from availing himself of any defence he may have arising out of the statute against usury. The principle which applies to this part of the case is ruled in *Duncan* v. *M'Cullough, Adm. of Findley*, (4 *Serg. & Rawle* 486). When there has been actual and positive fraud, or the adverse party has acted *mala fide*, there can be no such thing as a confirmation; what was once a fraud will be always so. The reason is, that a contract infected with fraud is not merely voidable but void, and confirmation, without a new consideration, would be *nudum pactum*. So of usurious contracts, all the authorities concur that no subsequent confirmation will be available. Is, then, the agreement of the 9th April 1840 a simple confirmation of the original contract, or is it a new contract on new terms and conditions and upon a good and sufficient consideration? The point is not without difficulty; but I have come to the conclusion that it is nothing more (so far as respects the usurious consideration) than a confirmation of the original contract, with an extension of time for the payment of the money. The suit is on the first contract, no new security having been given or contract made. If a new bond and mortgage had been executed upon a new consideration, it would have presented a different aspect, unless it could have been shown that the transaction was a colourable shift to evade the statute against usury, devised when the money was originally lent and the bonds and mortgages given. There is nothing to prevent parties to an usurious contract from entering into a new agreement on a new consideration, if done under circumstances which negative the idea of imposition or undue advantage. If, therefore, on another trial, the jury should find that the contract is tainted with usury,

[Chamberlain v. M'Clurg.]

nothing has been subsequently done which can avail the defendant.

And now for the second point. The Bullick and Tracy mortgage was part of the original consideration, it being one of the securities assigned by Chamberlain to M'Clurg. The defence (so far as respects this item) is simply a failure of consideration *pro tanto*. It is neither fraudulent nor usurious, and consequently it may be the subject of confirmation or of compromise, as cannot be doubted. From the evidence it would seem that Chamberlain, while he admitted that M'Clurg had used diligence in attempting to recover the amount due on the mortgage, denied he was to suffer the loss, inasmuch as he had not guaranteed the recovery of the money. On the latter point it would appear that the parties were at issue. In a letter, dated the 27th January 1840, from Chamberlain to M'Clurg, which appears to have been in answer to a letter from the latter to the former, he uses this language: " I have made inquiry about the Bullick and Tracy affair, and find that everything has been done that is possible in the business. As I did not guarantee the claim, I consider that I have no further interest in it." Not quite three months afterwards the last agreement is made, which purports to be as well for the settlement of all variances as for the consideration afterwards mentioned, viz: the extending of the time for the payment of the money lent by Chamberlain to M'Clurg. In the agreement, Alexander and James M'Clurg expressly release and acquit Chamberlain from all claims, demands, liabilities and offsets, for any cause whatsoever, heretofore existing. If, therefore, the Tracy mortgage was one of the differences in the contemplation of the parties, there is an end of this part of the defence, for the settlement of existing controversies is a good consideration of a new contract; and if the jury believe this to be the case, the defendant will be estopped from setting up a defence which otherwise might have availed him. There is nothing in the bills of exception, for a party is not concluded or estopped by an usurious deed or security from showing external circumstances which prove the contract to be corrupt. A contrary doctrine would be a virtual repeal of the statute against usury. A party is permitted to prove circumstances and conversations, before and after a written agreement, for the purpose of showing the transaction was usurious. And on the contrary, if the agreement appears *primâ facie* to be usurious, the party is not concluded from showing that the true agreement was that only legal interest should be paid.

Judgment reversed, and *venire de novo* awarded.