## McHugh *versus* The County of Schuylkill.

1. The defence to a bond was that the obligor's name was forged; the court charged that if the obligor subsequently approved and acquiesced in the forgery or ratified it, the bond was binding on him. *Held,* there being no new consideration, that the instruction was error.

2. Where there has been actual and positive fraud or the party has acted malâ fide, there can be no confirmation.

3. A contract infected with fraud is void, not merely voidable; confirmation without a new consideration would be *nudum pactum.*

January 20th 1871. Before THOMPSON, C. J., READ, AGNEW and WILLIAMS, JJ. SHARSWOOD, J.; at Nisi Prius.

Error to the Court of Common Pleas of *Schuylkill county:* Of January Term 1870, No. 366.

This was a feigned issue directed October 1st 1869, between James McHugh, plaintiff, and The County of Schuylkill, defendant, to try whether a bond on which judgment had been entered and which purported to have been signed by the plaintiff, had been executed by him.

The instrument was the official bond of Patrick McKenna, collector of taxes in Port Carbon, and was in the penalty of $17,668 conditioned for the collection and paying over of the taxes appearing on the duplicate amounting to $8834. The bond appeared to be signed by the plaintiff and nine others as sureties for McKenna: the name "Francis McHugh" appeared as witness to the plaintiff's signature.

On the trial, February 1st 1870, before Ryon, P. J., the plaintiff called

Mary McHugh, who on the bond being shown her, testified: "I have seen this before. I know who wrote James McHugh's name on this. I did it. I wrote Francis McHugh's name also. Francis McHugh is my brother. I am James McHugh's daughter. Mr. Patrick McKenna told me to write James McHugh's name to this paper. My father was not present when I wrote it. He did not tell me to write it. I wrote the name in the dining-room of our house. No one was in the room when I wrote father's name but McKenna. Francis came in just as I had written my father's name. McKenna asked his name. I told him 'Francis;' and he told me to put that down too." * * *

Francis McHugh testified: "I am a son of James McHugh.

[McHugh *v.* County of Schuylkill.]

I remember seeing McKenna at our house one time when my sister wrote my name to that paper; this was done in the dining-room. McKenna, my sister and myself were the only persons present. I came in from the kitchen. McKenna took the paper and went into the bar-room. I think I went into the kitchen. I could write. When McKenna left the dining-room I did not see him again." * * *

John McQuail testified: "I live in Luzerne county; I went to Mahanoy City with McKenna to his house; we started together from New Philadelphia. McKenna came there for me. We went to Mahanoy City together to the house of James McHugh. We got to his house sometime about half-past four in the afternoon. When we went in there, there was no one in the bar-room but McHugh's daughter. McKenna did not make himself known at once. When we went in the old man came in and after they had talked awhile he pulled a paper out of his pocket and threw it once on the counter and said, I want you to put your name to that. McHugh shook his head and said, 'That is something that I don't do.' So McKenna picked up this paper to put it in his pocket and appeared mad or dissatisfied that he shouldn't do this favor for him." * * *

For defendant: Patrick Carr testified: "I was at Mahanoy City some time ago at McHugh's house some two or three months before McKenna was arrested. McHugh asked me how McKenna was getting along with the collecting of the tax. I told McHugh that I heard McKenna was $3000 behind. McHugh said it was a good job that he, McHugh, was not his bail. I asked him if he was not on his, McKenna's, bond, he said he was not. Some time after that I saw McKenna. I told McKenna of the conversation he had with McHugh. I afterwards saw McHugh at Port Carbon in McKenna's house. I asked McHugh whether he had said that he was not on McKenna's bond. He denied having said this to me. There was some talk there, I don't remember what it was, but McKenna introduced him to the men there as his bail. McHugh said he was on McKenna's bond and would be there again if he, McKenna, could get the tax again. James McGovern, Patrick Ruddy and Mrs. McKenna were present at the time. * * * It was three or four weeks afterwards McHugh came to McKenna's house; he came in alone. James McGovern, Thomas Ruddy and Mrs. McKenna and myself. McKenna fetched McHugh into the porter-room. I went alone into the porter-room; no one else but we three were there. I asked McHugh whether he had said to me at Mahanoy City that he was not on McKenna's bond. He said he had not. McKenna laughed and said he had, and left and went back to bar-room. They said the same out in bar-room. McKenna introduced McHugh as his bondsman. There is Mr. McHugh, one of my bondsmen, from Mahanoy City. They talked about the bond,

[McHugh.*v.* County of Schuylkill.]

but I cannot remember what they said. It was on a Sunday, three or four months before McKenna was arrested in 1868." * * *

Bridget McKenna testified: "I am the wife of P. McKenna; I know Mr. McHugh; the last time McHugh was at our house was when he came to borrow money; McHugh, McKenna and myself went into the porter-room; we got talking about this bail; McHugh told McKenna to try and get the money collected and pay it in as fast as he could; he said he was in some difficulty about his property, and could do nothing while he was on Pat's bond; he said something about a difficulty he was in; he asked Mr. McKenna to lend him $500; McKenna said he had none, but he would go and get him some; they began to talk about McHugh's denying being on the bond; McHugh said he never said it to Carr; we came out then." * * *

In rebuttal the plaintiff testified: "I did not see my daughter when she wrote my name to the bond. I did not know she had done it until three or four days after my little girl wrote my name. We were sitting at the supper table when I heard of it. I did not see McKenna for three weeks after. I saw McKenna in Port Carbon, and asked him to have my name off the bond. I came down to get McKenna to take me off the bond. He began to curse me and ask if I was afraid he would run off with the money. I asked him why he could go over little children so. He said damn his soul he did not care, he had my name anyhow. Four or five weeks after I came down again to see if he had done it. He said he had not and would not. * * * The first I knew of being on the bond, was when the little girl told me McKenna had asked me to sign on this bond. I told him no I could not bail a cat. He did not ask me again. He asked me in my own bar-room. * * * As soon as McKenna put the question to me, I left to get some ale. McKenna did not call for the drinks. There was no one left in charge of the bar-room. I was away three-quarters or half an hour, less or more. * * * I cannot read or write." * * *

The following are points of the defendant, with their answers:—

2. Even if James McHugh had not authorized his name to be put on the bond, yet if he afterwards affirmed it, as testified to by the witnesses for the defendant, he is still liable thereon.

Answer: "McHugh might, if he did not authorize the signing of his name, approve or adopt the act as his own, in which case he would be liable on the bond. But whether he did so approve or adopt the act of his daughter is a question for the jury. This testimony relating to the acknowledgment of the plaintiff that he was upon the bond would refer to the original act more particularly than to a ratification of anything that was done without his authority. With these remarks we affirm this point."

3. If the name of James McHugh was subscribed to the said

· [McHugh *v.* County of Schuylkill.]

bond without his direction or consent, and subsequently he ratified the same, or consented to or approved of it, he is still bound by the bond.

Answer: " Answered by reasons given in answer to defendant's 2d point."

The court charged:—

" McHugh, the plaintiff, was one of the sureties of Patrick McKenna, who was appointed collector of the county rates and levies for 1867. McHugh alleges that his signature to the bond was a forgery and this issue was directed to try that question, wherein McHugh was made plaintiff and the county the defendant. If McHugh did not make his signature to this bond or authorize another to make it for him, but his name was put upon this bond without his knowledge or consent or authority, then the plaintiff is entitled to a verdict. [Upon the other hand, if McHugh authorized his name to be put upon this bond, or consented that it should be put there at the time it was put upon the bond, or subsequently approved it and acquiesced in the act, he would be bound, and your verdict should be for the defendant.] The plaintiff contends that his name was put on this bond by his daughter, and signed by his son (small boy) in his absence and without his authority or knowledge, at the instance of McKenna, and that he (plaintiff) did not know that his name was on the bond until four days after it was put there by his daughter. This state of facts is sustained by his daughter and son and the plaintiff himself and by his declaration subsequently made and proved by the defendant. After the plaintiff knew that his name had been affixed to the bond he proves that he took steps to have his name taken off. The evidence you have heard, and if you believe it your verdict should be for the plaintiff.

" [The county have not been able to prove that the plaintiff at the time signed the bond by witnesses that were present at the signing, but rely upon the declarations of the plaintiff, subsequently made, and circumstances to show that the plaintiff's name was put there with his knowledge or consent, or was subsequently approved by the plaintiff. The facts are before you and you must determine the question. If you should find the facts as contended for by the county, as above stated, your verdict should be for the county.] The testimony is conflicting and contradictory. Your duty is to reconcile it if you can; if not you must give credit to such as you think most reliable, and disregard such as you think is not entitled to credit."

The verdict was for the defendant.

The plaintiff took out a writ of error and assigned for error; the answers to the defendant's points and the portions of the charge in brackets.

[McHugh v. County of Schuylkill.]

*H. B. Graeff* and *J. W. Ryan*, for plaintiff in error.—The bond as to McHugh being void at its inception could not be ratified: Duncan *v.* McCullough, 4 S. & R. 483; Chamberlain *v.* McClurg, 8 W. & S. 31.

*A. W. Schalck* (with whom was *G. D. B. Keim*), for defendant in error.—The plaintiff is estopped by his laches: Garrigues *v.* Harris, 5 Harris 351; Martin *v.* Ives, 17 S. & R. 366. When a loss must befall one of two innocent persons, he must bear it, through whose act it was occasioned: Hill *v.* Epley, 7 Casey 334; Epley *v.* Witherow, 7 Watts 165; Carr *v.* Wallace, Id. 400; Patterson *v.* Lytle, 1 Jones 56; Nass *v.* Van Swearingen, 10 S. & R. 146; Commonwealth *v.* Moltz, 10 Barr 530; Keeler *v.* Vantuyle, 6 Id. 253; Chapman *v.* Chapman, 9 P. F. Smith 214; Bridge Co. *v.* Kline, Brightly's R. 324; Garrett *v.* Gonter, 6 Wright 143. A consideration is not necessary to the validity of a bond; Page *v.* Trufant, 2 Mass. 159; and a failure of consideration is not a defence to an action on a bond: Dorlan *v.* Sammis, 2 Johns. 179. The seal imports a consideration, and creates a legal obligation: Candor's Appeal, 3 Casey 119. One who has been induced to enter into an agreement by fraud may affirm the contract after the discovery of the fraud: Whitney *v.* Allaire, 4 Denio 554; Blydenburgh *v.* Welsh, Bald. 331; Ulingate *v.* King, 10 Shep. 35; Byers *v.* McClanahan, 6 Gill & Johnson 250; Rhode *v.* Louthain, 8 Blackf. 413; Hill *v.* Scales, 7 Yerger 410.

The opinion of the court was delivered, February 9th 1871, by

READ, J.—If the story told on the part of the plaintiff is believed, then his name was forged as a surety upon a bond given to the county of Schuylkill by a collector of taxes, by the principal in the instrument. Assuming this to be a fact for the purposes of the case, the question is, was the court in error either in its answers to the points, or in its charge to the jury? A forged deed is void. The plaintiff cannot write, and there is no mark to the name of James McHugh on the bond, and the name is proved to be in the handwriting of his daughter, who was directed by McKenna, the principal, to sign it, and if the testimony is believed without a shadow of authority from the plaintiff McKenna, using the daughter and son as his innocent instruments in committing this crime. There is not a particle of evidence that the commissioners or any of the county authorities ever saw the plaintiff, but the whole testimony which is relied on to establish the plaintiff's liability, are vague conversations and declarations from which approval, acquiescence or ratification are inferred.

From the answers to the defendant's points, and the charge of the court, the learned judge appears to have instructed the jury that if the plaintiff subsequently approved and acquiesced in this

[McHugh *v.* County of Schuylkill.]

void act, or ratified it or subsequently approved of it, then the bond was binding upon him. No new consideration of any kind was either alleged or pretended, and the cases of. Duncan *v.* McCullough, 4 S. & R. 483, Chamberlain *v.* McClurg, 8 W. & S. 31, 36, Goepp's Appeal, 3 Harris 428, show clearly, that under the circumstances the act simply retains its original character, and is entirely void.

Judge Rogers says, 8 W. & S. 36, "The principle which rules this part of the case, is ruled in Duncan *v.* McCullough, administrator of Findley, 4 S. & R. 486. When there has been actual and positive fraud, or the adverse party has acted malâ fide, there can be no such thing as a confirmation; what was once a fraud, will always be so. The reason is, that a contract infected with fraud, is not merely voidable, but void, and confirmation without a new consideration would be *nudum pactum*."

Can there be any doubt of the application of this rule to a forged bond or deed which involves the commission of a heinous crime, punishable with a fine not exceeding $1000, and imprisonment by separate or solitary confinement at labor not exceeding ten years?

The case of Garrett *v.* Gonter, 6 Wright 143, has really no application whatever; for the alleged forged power of attorney was not ratified at all, and the only alleged ratification was of a mortgage which was "executed in her name by a professed agent acting under a real or a pretended authority"—"to ratify that required no new consideration from the mortgagee."

In two cases this term, forgeries are alleged of sureties' names to bonds of collectors of taxes in Schuylkill county, and we believe embezzlements of the public moneys charged against the principals. The commissioners should certainly exercise more care and caution in selecting honest officials, and in taking good security.

Judgment reversed, and a *venire facias de novo* awarded.