The opinion of the court was delivered by
McEnery, J,
The defendant was convicted of embezzlement and has appealed.
In the brief of defendant it. is stated, “We abandon all bills of exceptions in the record except the fourth bill of exception.”
The fourth bill is as follows:
“Be it remembered, that on the 27th day of February, 1893, this ease came up for trial, as appears in evidence; that a Mr. Jules Sugg, one of the witnesses for the State, reached New Orleans on the 6th day of August, 1892; that defendant was absent from the city at the time, for the benefit of his health; that as soon as he learned that Mr. Sugg, a partner of the firm of Gassner & Oo., was in the city, the defendant returned to the city as soon as possible; that he reached the city on the 26th day of August, 1892; that on the 28th day of August, he, the defendant, and Mr. Sugg, of Gassner & Oo., met in their office, had a long and full conversation concerning the losses of Gassner & Oo., and the defendant, whereupon Mr. Sugg asked the defendant for a full and complete statement of the entire transaction, to make a full and complete written statement, that he, Sugg, might forward same to the Liverpool house of Gassner & Oo.; whereupn the defendant then and there made out a written statement, fully, truthfully and fairly, showing how the losses occurred, and delivered same to Mr. Sugg, who read it over carefully and mailed it to the Liverpool house. It would be well for the court to be informed that a settlement had been proposed by Mr. Sugg, that the defendant should assume all the losses, amounting to thirty-six thousand eight hundred and sixty-six dollars and fifty-one cents ($36,866.51).
“ That defendant declined to assume the losses which had occurred in speculation in the name of Gassner & Co. and for their *1286 account; that he did assume the responsibility for the losses of the money which he had overdrawn and used and lost for his own account. ‘ “That on the 10th day of September following Mr. Sugg served upon defendant an account current, which is to be found in record page---, in which each item of overdraft from its date was mentioned, together with the charge of interest from its time of overdraft up to the first day of September 1892, together with certain law charges of the firm of Gassner & Oo., contracted, all of which will more fully appear -by an inspection of said account current; that after the second account current had been served as above mentioned, Mr. Sugg, of the said firm of Gassner & Oo., requested the defendant to acknowledge the correctness of the said account current in writing, which the defendant promptly acknowledged; that on the 6th of October of the same year the defendant was arrested and taken before the First Recorder’s Court and, after due proceedings had there, the case was transferred to the Oriminal District Oourt.
“ That at no time after the return of the defendant on the 26th day of August was any controversy held between the defendant and the firm of Gassner & Oo., except when Mr. Sugg wanted the defendant to assume the responsibility of the entire losses, amounting to |86,866.51, at which time it was agreed that the defendant’s loss should be the sum of |10,590.31, as appears in said account current. That on the trial and durirfg the argument it was contended by defendant’s counsel that the whole transaction had been ratified by Gassner & Oo., through Mr. Julius Sugg, and that the tort, if there was a tort, in connection with the entire transaction was entirely removed by the action of Gassner & Oo., as related above.”
And the trial court was requested to charge the jury as follows:
“ The general rule as to the effect of a ratification by a principal of the unauthorized act of his manager or agent is well settled. The ratification operates upon the act ratified precisely as though authority had been previously given. The principal may ratify the wrongful use of his money or property by his ‘ manager’ or agent, and thereby establish the relation of debtor and creditor between them. -Such ratification will remove the tort or wrong."
On the refusal of the trial judge to charge the jury as above, counsel for the accused reserved this their fourth bill of exceptions.
Upon this bill the following endorsement was affixed:
*1287 Per euriam. “ I can not concur in the statement of facts as given in this bill. There was no ratification of the defendant’s authorized or unauthorized acts. Where the victimized firm suffered losses by reason of the defendant’s unauthorized transaction, suit was brought against third persons and a great portion of the money recovered. Criminal prosecutions were instituted as to others.”
The indictment charges the defendant with embezzling $200, which was one of the items in the account current submitted to Gassner & Oo.
There was evidence before the jury of ratification by Gassner & Oo. of all the unauthorized acts of the defendant, and had the proof been sufficient, as alleged by defendant, the law applicable to the ratification by a principal of the unauthorized acts of the agent would be applicable in a civil suit between the principal and the agent.
But it has no place in a criminal prosecution when the act is of such character as to involve a crime denounced by the State as opposed to public policy. Embezzlement is an offence of this character. The loss -to the individual is a matter personal to himself. It is optional with him to recover the amount due him in consequence of-the embezzlement in the implied contract to reimburse him. But the crime concerns the public policy of the State, and no agreement, compromise or ratification can make that which she has denounced as a crime an innocent act, relieving the offender from the punishment attached to it.
The offence of embezzlement is of that nature which the public takes notice of as injurious to itself. 1 Bishop, Criminal Law, paragraph 282.
Mr. Bishop says in the paragraph referred to: “ Nothing can be more purely a tort to the individual alone than a simple larceny where there is no breach of the peace; no public loss of property, since it only changes hands; no immorality, corrupting the minds of the young; no person in any way affected but him who takes and him who loses the thing stolen. And as in larceny, so it is in many other crimes; a public offence is committed, while only an individual suffers.”
Any agreement to suppress the crime would be contrary to public policy and void, as the State has the right to pursue and punish the criminal. Meecham Agency, par. 116; Thisler vs. Vandike, 82 Pa. 447; McHugh vs. County, 67 Pa. 391.
*1288 The case of Faquer vs. Knox, 66 New York, 525, was for malicious prosecution for the crime of embezzlement. The court, upon request, charged: “If you find that the defendant, prior to the complaint against the plaintiff charging him with embezzlement, settled with the plaintiff for the moneys, the defendant afterward charged the plaintiff with having embezzled as and for a debt on a contract, expressed or implied, such fact would be evidence that the defendant did not believe the plaintiff had embezzled the said moneys.”
On appeal to the Court of Appeals the charge was held erroneous.
Ohief Justice Ohurch in the opinion of the court said the effect of the charge “was to produce an erroneous impression;” the effect of it was to convey the idea that the settlement and payment of the amount claimed by defendant was evidence that no crime had been committed, and the defendant did not believe that there had been.
The defendant had a legal right to settle with the plaintiff and to receive payment for the amount abstracted as and for a debt upon an implied contract, and such settlement was no bar to a criminal prosecution, nor did it furnish evidence that the defendant did not believe that the money had been embezzled.
In the case of People vs. Hurst, 28 N. W. R., page 838, relied upon by defendant, there was no question raised as to the “ratification” of the acts which constituted the embezzlement.
It was a question of felonious intent, whether the mere failure to pay the money indicated a design to cheat and deceive the owner.
A candid admission of the debt was made at once on inquiry, and partial payment was made and security given at different times for the debt.
No such question is presented here. The bill does not present the question whether or not the transaction between the parties had assumed the shape of the facts in the above case.
The bill of exceptions does not show that previous to the settlement the transaction assumed the shape of debtor and creditor, or that in the settlement offered in evidence there was any such relation between the parties other than the implied contract to make restitution for the amount embezzled.
The defendant was convicted. We must presume that all the constituent elements of embezzlement were proved, and among them, concealment. On this point there is no conflict. The question, then, is did the presentation of the account to defendant, or, as is alleged, *1289 the account presented to Sugg, made out by defendant at Sugg’s request or demand, showing his wrongful use of money in the management of the business, his acknowledgment of the account, and his promise to pay the amount converted by him, and his refusal to assume other obligations, constitute such a state of facts as to make the business relation between the parties that of debtor and creditor. We think not.
The embezzlement had been committed. No transaction between the parties could have prevented the prosecution, which was not to. enforce any right of the prosecutors, but to punish a crime committed against the State.
Judgment affirmed.